## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE DEGAS SCULPTURE PROJECT LTD and, MODERNISM FINE ARTS INC | Case No.:  14-cv-4304 (ALC) Hon. Andrew L. Carter |
| Plaintiffs, | **ECF CASE** |
| | **COMPLAINT AND JURY DEMAND** |
| -v- | |
| ROSE RAMEY LONG, a/k/a Rose Ramey Littlejohn, individually and d/b/a ROSE LONG FINE ART, a/k/a RRL Fine Art | |
| Defendants. | |

### COMPLAINT

PLAINTIFFS, The Degas Sculpture Project Ltd and Modernism Fine Arts Inc, by and through counsel BUIKEMA, PLLC,[1] state as follows for their Complaint against Defendant Rose Ramey Long individually, a/k/a Rose Ramey Littlejohn and d/b/a Rose Long Fine Art:

### THE PARTIES

1. Plaintiff, The Degas Sculpture Project Ltd (hereinafter "DSP"), is a New Jersey corporation with a principal and registered place of business at One Gateway Plaza, Suite 2600, Newark, New Jersey 07102.

2. DSP is a fine art dealer specializing in bronze sculptures cast from recently discovered Edgar Degas sculptures in plaster.

---

[1] Subject to a concurrent request for admission *pro hac vice*.

3.      Plaintiff, Modernism Fine Arts, Inc. (hereinafter "MOD"), is a New York corporation with a registered office of 770 Lexington Ave., Sixth Floor, New York, New York 10065 and a principal business address of 250 West 57th Street, Suite 901, New York, New York 10019.

4.      MOD is a private art dealer specializing in works by master artists of the early 20th century..

5.      Defendant Rose Ramey Long (hereinafter "Long") is a citizen of the State of Tennessee domiciled at 1 E. Parkway North, Memphis, Tennessee, 38104.

6.      Defendant Long is a private art dealer who also does business as Rose Long Fine Art (hereinafter "RLFA").  Although Long and RFLA maintain a New York apartment and/or place of business, RFLA is an unincorporated business indistinct from its owner Long who, again, is domiciled in Tennessee.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction in this matter, pursuant to 28 USC § 1332(a), due to a complete diversity of citizenship.

8.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.      Venue is proper in this Court, pursuant to 28 USC § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred within this District.

10.      The action is based, in part, upon a number of written contracts for sale of artwork each of which specify (in these words or in similar vernacular to the same effect) that "any dispute(s) or claim(s) which may involve . . . this Invoice shall be submitted only and exclusively for resolution to a federal or state court located in the City, County and State of New York."

2

## GENERAL ALLEGATIONS

11.     Plaintiffs adopt and incorporate by reference, all preceding and succeeding paragraphs of their Complaint as if fully set forth herein.

12.     In the course of its business, DSP acquired title to an exceptionally rare and valuable limited edition bronze of Edgar Degas' famed sculpture, *La Petite Danseuse de Quatorze Ans* ("The Little Dancer, Age Fourteen").

13.     In the course of its business, MOD acquired title to a number of rare and valuable etchings by Pablo Picasso from *Sueño y Mentira de Franco,* ("Dreams and Lies of Franco" and *En La Teberna: Pécheurs Catalans en Bordée* (In the Tavern: Group of Catalan Fishermen) respectively dated 1937 and 1934.

14.     Pursuant to consignment contracts with third-party owners, MOD also acquired possession of, and the exclusive right to sell, subject to the consignors' interests, a set of sixteen (16) extremely rare and valuable original oil on paper paintings by Willem deKooning.

15.     Pursuant to an Agreement with a third-party owner, MOD also acquired possession of, and the exclusive right to sell, subject to the consignor's interest, a rare and valuable Untitled 1930 Crayon Drawing on Ingres Paper by Joan Miró.

16.     In February of 2014, Long, a colleague art dealer, originally expressed an interest in acquiring the above-identified deKoonings from MOD.

17.     In late February and early March of 2014, Long vetted the pieces by reviewing images, provenance, authentication data and, ultimately, by viewing the pieces herself in New York on March 5, 2014.

3

18.     Long individually, and/or d/b/a RLFA, also expressed an interest in acquiring the other pieces by Degas, Miró and Picasso.

19.     It appeared to be Long's intention to resell the pieces (for a profit) to a collector client in California.

20.     To protect the integrity, historical significance, public accessibility and long-term commercial aspects of its Degas bronzes, Plaintiff DSP has historically restricted the private sale of the same to collectors who would commit to donate the pieces to reputable museums, to exhibit them or, minimally, to hold them from resale for a period of several years.

21.     In March, 2014 Long specifically represented, by phone and by email, that her notable end client was opening a new museum in San Francisco and that all of the works to be acquired were earmarked for the new museum's collection.

22.     As result of that representation, DSP and MOD agreed to sell the Degas, deKoonings and remaining above referenced works to Long/RFLA and even agreed to a 10% reduction in the originally quoted prices for the deKoonings.

23.     On March 27, 2014 DSP and MOD verbally agreed to sell and Long and/or RLFA verbally agreed to buy all of the aforementioned artworks for specific, but confidential, prices totaling many millions of dollars.  DSP/MOD then confirmed the contract via writing (email) on the same date.  See, **Exhibit 1** (price redacted).

24.     The parties also reached consensus on all remaining material transaction details including transfer of possession, shipping, insurance, time for payment and the like.

25.     The parties each maintained secured art storage facilities at a common agent (Cirker's New York) and, on or about March 28, 2014, DSP and MOD fully performed the contract by directing Cirker's to physically transfer possession from their unit(s) to Long's.

26.   Cirker's, in fact, delivered the items to Long's possession.   Long personally inspected the same, issued no objection to the conformity or condition of the works and, immediately thereafter, shipped them directly to her end client in California without any form of advance, security for payment or escrow facility/agent.

27.   On March 28, 2014, DSP issued (via Federal Express) Long/RLFA a written invoice for the sale of the Degas Little Dancer.   See, **Exhibit 2** (price redacted).

28.   On March 31, 2014, MOD issued (via Federal Express) Long/RLFA a written invoice for the sale of the Picasso etchings.   See, **Exhibit 3** (price redacted).

29.   On March 31, 2014, MOD similarly issued (via Federal Express) Long/RLFA a written invoice for the sale of the Miró drawing.   See, **Exhibit 4** (price redacted).

30.   Finally, on April 2, 2014, MOD issued (via email ) Long/RLFA a written invoice for the sale of the deKooning original oil paintings on paper.   See, **Exhibit 5** (price redacted).

31.   The Plaintiffs' invoices all accurately recite the terms and conditions of the parties' contract(s) including that payment for the artworks shall be made in full by Long/RLFA on or before April 15, 2014.

32.   Defendant never objected to the invoices nor to any of the terms and conditions stated therein.

33.   To date, Defendant has only paid $110,000 against a total purchase price vastly exceeding that sum.

34.   Worse, Defendant resold the subject artworks to a customer other than the notable/reputable person originally disclosed to Plaintiffs.

35.     Defendant performed absolutely no due diligence into that customer's qualifications to purchase, background, financial condition or representations as to the underlying new museum claim.

36.     Furthermore, there was a colossal failure on the part of Long for her duty of care for the transaction and for the safekeeping of the art.

37.     Defendant's "customer" was, in fact, a recently released from custody, twice-convicted, federal felon with a history of fraudulent conduct and no source of current income or tangible assets.

38.     On April 6, 2014 Defendant traveled to California ahead of the scheduled delivery to her customer.

39.     Defendant was present at delivery on April 7, 2014 and noted erratic behavior and troubling circumstances surrounding her transaction with the same.

40.     By way of example only, her customer was hostile and resistant to her presence, the delivery was to the garage of a home (not museum), the home was devoid of any furnishings or artworks and the individual refused to directly sign for or open and inspect the shipping crates containing the artworks.

41.     Pursuant to the terms of the contract(s) between Long and Plaintiffs, "[f]ree and clear title" to the artworks would only pass to Long/RFLA upon Plaintiffs' receipt of payment in full.

42.     Except for the price structures, the consignment transaction between MOD and the deKoonings' owners and the owner of the Miro was fully disclosed to Long prior to her purchase of the same.

6

43.    Therefore, at the time of the above described circumstances of delivery to Long's "customer," Plaintiffs and their consignors still owned title to the works entrusted to Long/RLFA.

44.    Undaunted, Long nevertheless allowed the Cirker's shipment agents to release all of the crates containing these artworks into her "customer's" garage and even signed the acceptance of delivery on his behalf.

45.    Perhaps unsurprisingly, Long's "customer" then refused to pay for, return or release the artworks and, later, began to claim that they were gifted to him by Long, essentially valueless and that he only received four, not five, of the crates that were shipped.

46.    Long/RFLA have failed to pay the contract price and have failed to return the works to DSP, MOD and its consignors.

47.    Plaintiffs were consequently required to hire California counsel, at significant and ongoing expense, in an effort to retrieve their property.

48.    Long's "customer" has been arrested and is currently in federal custody without bond.

49.    A search warrant incident to the arrest recovered four, not five, crates of artwork.

50.    On June 5, 2014 those crates were opened under the supervision of federal agents and in the presence of the parties or their counsel/agents.

51.    The deKoonings, Miró and Picassos are accounted for and, upon information and belief, will ultimately be returned to Plaintiffs.

52.    The Degas Little Dancer bronze is unaccounted for and presumed stolen without reasonable prospects of recovery.


## COUNT I – BREACH OF CONTRACT

7

53.    Plaintiffs adopt and incorporate by reference, all preceding and succeeding paragraphs of their Complaint as if fully set forth herein.

54.    Plaintiffs and Defendant entered into valid, enforceable written contracts for the sale of artworks to Defendant by Plaintiffs.

55.    Each contact was supported by mutuality of assent to the material terms of price, quantity, identification of goods and all other conditions set forth in the Exhibit invoices.

56.    Each contract was supported by adequate consideration.

57.    The agreed terms of the contracts required Defendant to pay Plaintiffs a confidential purchase price on or before April 15, 2014.

58.    Plaintiffs fully performed by, among other things, timely delivering conforming artworks to Defendant.

59.    Defendant materially breached the parties' contracts by failing to pay the balance of the purchase price.

60.    Defendant never objected to the condition, quality or conformity of the goods delivered and, similarly, never objected to the terms and conditions stated in Plaintiffs' invoices.

61.    Defendant has refused and/or is unable to return the goods.

62.    As a direct and proximate result, Plaintiffs sustained damages including but not limited to the lost purchase price in excess of the $110,000 paid, lost profits from the sale, loss of alternative sales, loss of the use and enjoyment of these rare works, loss of property including an apparently permanent loss of the Degas Little Dancer bronze and actual and consequential damages such as attorney fees.

63.    The works covered by the agreements have appraised and subject transaction values of many millions of dollars.

64.     As a direct and proximate result of Defendant's breach of contract, Plaintiff therefore sustained damages substantially in excess of the jurisdictional minimum of this Court exclusive of costs, interest and attorney fees.

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendant in an amount to be determined by the Court and/or jury in the sound exercise of its just and equitable powers.


## COUNT II – BREACH OF FIDUCIARY DUTY

65.     Plaintiffs adopt and incorporate by reference, all preceding and succeeding paragraphs of their Complaint as if fully set forth herein.

66.     Defendant holds herself out to the public and other dealers as a reputable, well experienced and trustworthy art dealer.

67.     Defendant was actually aware of the consigned nature of the deKoonings, Miro and of Plaintiffs' residual title interest in the subject artworks until such time as the purchase price balance was discharged.

68.     The subject goods are of extraordinarily unique historic, cultural and economic value and are, quite literally, irreplaceable.

69.     Defendant held herself out to the public and to Plaintiffs as a person to be entrusted with such transactions.

70.     While Plaintiffs outright sold the artworks directly to Defendant, Defendant may be expected to claim that the parties' arrangement was, alternatively, commission and/or consignment based.

71.    Under the totality of these circumstances and/or as a result of the consignment arrangement, to whatever extent alternatively adopted by the court, Defendant was placed is a position of high trust by Plaintiffs and owed the same a fiduciary duty of care.

72.    Defendant breached that duty by, among other things, releasing possession of Plaintiffs' artworks entrusted to her, without adequate security of performance, to a convicted felon under circumstances that she knew or should have known presented a high risk of loss.

73.    Defendant is apparently unwilling or unable to independently fulfill the terms of her contract with Plaintiffs absent proceeds from the sale to her "customer," yet failed to vet or determine that customer's own ability to perform.

74.    Defendant's actions and omissions in the circumstances described above were objectively and subjectively unreasonable, breached the duty of fiduciary care, and directly and proximately resulted in significant damage to Plaintiffs.

75.    Specifically, Plaintiffs have sustained, through current date, lost possession, lost use and enjoyment of their property, consequential attorney fees necessary to its recovery, lost profits, lost alternative sales, adverse publicity and, most significantly, a complete loss of the Degas Little Dancer bronze.

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendant in an amount to be determined by the Court and/or jury in the sound exercise of its just and equitable powers.


## COUNT III – NEGLIGENCE

76.    Plaintiffs adopt and incorporate by reference, all preceding and succeeding paragraphs of their Complaint as if fully set forth herein.

10

77.    Defendant owed a duty of ordinary care to Plaintiffs as a result of the above described facts and circumstances.

78.    Defendant breached that duty by, among other things, failing to exercise due care for the protection of Plaintiffs' and its consignors' continuing title interest in the subject artworks, delivering the same to a disreputable person under objective suspicious circumstances and by failing to make adequate provision to secure financial performance of the same before releasing possession of these works to the garage of an empty residence.

79.    Defendant's actions and omissions were objectively and subjectively unreasonable under the circumstances.

80.    As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs sustained damages.

81.    Specifically, Plaintiffs have sustained, through current date, lost possession, lost use and enjoyment of their property, consequential attorney fees necessary to its recovery, lost profits, lost alternative sales, adverse publicity and, most significantly, a complete loss of the Degas Little Dancer bronze.

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendant in an amount to be determined by the Court and/or jury in the sound exercise of its just and equitable powers.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, The Degas Sculpture Project Ltd. and Modernism Fine Arts, Inc., hereby demand a trial by jury upon each of the causes of action so triable.

Respectfully submitted,

**BUIKEMA, PLLC**

By:

Eric A. Buikema (MI #P58379)
901 Wilshire Drive, Suite 550
Troy, MI 48084
(248) 247-3300
eric@buikemapllc.com

*Attorneys for Plaintiff, subject to admission Pro Hac Vice*

Dated: June 9, 2014

12