**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE DEGAS SCULPTURE PROJECT LTD and
MODERNISM FINE ARTS INC,

                Plaintiffs,

      v.

ROSE RAMEY LONG, a/k/a Rose Ramey
Littlejohn, individually and d/b/a ROSE LONG FINE
ART, a/k/a RRL Fine Art,

                Defendants.

                14 CV 4304 (ALC)

ROSERAMEY LITTLEJOHN AND ROSE LONG
FINE ART,

                Counterclaimants,

      v.

THE DEGAS SCULPTURE PROJECT LTD,
MODERNISM FINE ARTS INC,
WALTER F. MAIBAUM AND
CAROL CONN,

                Counterclaim Defendants.

**ANSWER, AFFIRMATIVE
DEFENSES AND
COUNTERCLAIMS OF
ROSERAMEY LITTLEJOHN
AND ROSE LONG FINE ART**

**Jury Trial Demanded**

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF ROSERAMEY LITTLEJOHN AND ROSE LONG FINE ART

      Defendants Roseramey Littlejohn and Rose Long Fine Art ("Defendants"), by and

through their attorneys De Feis O'Connell & Rose, P.C., respectfully submit their Answer,

Affirmative Defenses and Counterclaims as outlined below.

## INTRODUCTORY STATEMENT

      By way of general response, all allegations in the Complaint are denied unless expressly

and specifically admitted.  Any factual allegation admitted below is admitted only as to the

specific facts and not as to any conclusions, characterizations, inferences, implications, or speculation contained in the allegation or the Complaint.  Defendants respectfully submit that they are not required to respond to legal conclusions.  Defendants neither admit nor deny those allegations that are legal conclusions.  To the extent a response is required, Defendants deny such allegations, unless otherwise stated.  Where an allegation refers to "Defendant" without specifying which defendant, Defendants respond as to both.  The comments and objections in this Introductory Statement are incorporated into each numbered Paragraph below.

1.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 1.

2.      Defendants admit that DSP is an art dealer, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 2.

3.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 3.

4.      Defendants admit that MOD is an art dealer, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 4.

5.      Defendants admit the allegations in Paragraph 5.

6.      Defendants admit that Roseramey Littlejohn is an art dealer who also does business as Rose Long Fine Art, that they maintain a New York address, and that Ms. Littlejohn is domiciled in Tennessee.  Defendants deny the remaining allegations asserted in Paragraph 6.

7.      The allegations in Paragraph 7 state legal conclusions to which no response is required.

8.      The allegations in Paragraph 8 state legal conclusions to which no response is required.

9.      The allegations in Paragraph 9 state legal conclusions to which no response is required.

10.      Defendants admit that the action is based on the sale of artwork, but deny the remaining allegations in Paragraph 10.

11.      Defendants repeat and incorporate each and every response above and below as if fully set forth herein.

12.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 12.

13.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 13.

14.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 14.

15.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 15.

16.      Defendants deny the allegations in Paragraph 16.

17.      Defendants deny the allegations in Paragraph 17, except admit that at the request of Walter Maibaum, Ms. Littlejohn viewed certain de Koonings in New York in March 2014.

18.      Defendants deny the allegations in Paragraph 18.

19.      Defendants deny the allegations in Paragraph 19.

20.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 20.

21.     Defendants deny the allegations in Paragraph 21, except admit telling Walter Maibaum and Carol Conn that Luke Brugnara claimed to be interested in buying works of art for his museum.

22.     Defendants deny the allegations in Paragraph 22, except admit telling Walter Maibaum and Carol Conn that Luke Brugnara claimed to be interested in buying works of art for his museum.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 22.

23.     Defendants deny the allegations in Paragraph 23.

24.     Defendants deny the allegations in Paragraph 24.

25.     To the extent the allegations in Paragraph 25 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 25 except admit that the parties maintained secured art storage facilities at Cirker's in New York.

26.     Defendants deny the allegations in Paragraph 26.

27.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 27.

28.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 28.

29.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 29.

30.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 30.

31.     Defendants deny the allegations in Paragraph 31.

32.     Defendants deny the allegations in Paragraph 32.

33.     Defendants deny the allegations in Paragraph 33.

34.     Defendants deny the allegations in Paragraph 34.

35.     Defendants deny the allegations in Paragraph 35.

36.     To the extent the allegations in Paragraph 36 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 36.

37.     Defendants deny the allegations in Paragraph 37, except admit that Luke Brugnara has a criminal record.

38.     Defendants deny the allegations in Paragraph 38, except admit that Ms. Littlejohn travelled to California on April 6, 2014 to be present at the delivery of the works of art.

39.     Defendants admit that Ms. Littlejohn was present at delivery on April 7, 2014, but deny the remaining allegations in Paragraph 39.

40.     Defendants admit that the delivery was to the garage of a home and that Luke Brugnara refused to sign or inspect the shipping crates, but deny the remaining allegations in Paragraph 40.

41.     Defendants deny the allegations in Paragraph 41.

42.     Defendants deny the allegations in Paragraph 42.

43.     To the extent Paragraph 43 asserts wrongdoing or inculpatory knowledge against Defendants, Defendants deny the allegations.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 43.

44.     Defendants admit that Cirker's delivered the crates to a garage, but deny the remaining allegations in Paragraph 44.

45.     Defendants deny the allegations in Paragraph 45, except admit that Luke Brugnara has claimed that the works of art were a gift, were valueless, and that he did not receive all the crates that were shipped.

46.     Defendants deny the allegations in Paragraph 46.

47.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 47.

48.     Defendants deny the allegations in Paragraph 48, except admit that Luke Brugnara was arrested.

49.     Defendants admit the allegations in Paragraph 49.

50.     Defendants admit the allegations in Paragraph 50.

51.     Defendants admit the allegations in Paragraph 51.

52.     Defendants admit that the Degas Little Dancer bronze is unaccounted for, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 52.

53.     Defendants repeat and incorporate each and every response above and below as if fully set forth herein.

54.     To the extent the allegations in Paragraph 54 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 54.

55.     To the extent the allegations in Paragraph 55 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 55.

56.     To the extent the allegations in Paragraph 56 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 56.

57.     To the extent the allegations in Paragraph 57 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57.

58.     To the extent the allegations in Paragraph 58 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 58.

59.     To the extent the allegations in Paragraph 59 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 59.

60.     Defendants deny the allegations in Paragraph 60.

61.     Defendants deny the allegations in Paragraph 61.

62.     To the extent the allegations in Paragraph 62 state legal conclusions, no response is required.  To the extent Paragraph 62 asserts wrongdoing or inculpatory knowledge against Defendants, Defendants deny the allegations.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 62.

63.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 63.

64.     To the extent the allegations in Paragraph 64 state legal conclusions, no response is required.  To the extent Paragraph 64 asserts wrongdoing or inculpatory knowledge against

Defendants, Defendants deny the allegations.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 64.

Defendants deny Plaintiffs' prayer for judgment and respectfully seek judgment in their favor, with all claims against them being dismissed with prejudice.

65.     Defendants repeat and incorporate each and every response above and below as if fully set forth herein.

66.     Defendants deny the allegations in Paragraph 66.

67.     Defendants deny the allegations in Paragraph 67.

68.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 68.

69.     Defendants deny the allegations in Paragraph 69.

70.     To the extent the allegations in Paragraph 70 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 70.

71.     To the extent the allegations in Paragraph 71 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 71.

72.     To the extent the allegations in Paragraph 72 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 72.

73.     To the extent the allegations in Paragraph 73 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 73.

74.     To the extent the allegations in Paragraph 74 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 74.

75.     To the extent the allegations in Paragraph 75 state legal conclusions, no response is required.  To the extent Paragraph 75 asserts wrongdoing or inculpatory knowledge against Defendants, Defendants deny the allegations.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 75.

Defendants deny Plaintiffs' prayer for judgment and respectfully seek judgment in their favor, with all claims against them being dismissed with prejudice.

76.     Defendants repeat and incorporate each and every response above and below as if fully set forth herein.

77.     To the extent the allegations in Paragraph 77 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 77.

78.     To the extent the allegations in Paragraph 78 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 78.

79.     To the extent the allegations in Paragraph 79 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 79.

80.     To the extent the allegations in Paragraph 80 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 80.

81.     To the extent the allegations in Paragraph 81 state legal conclusions, no response is required.  To the extent Paragraph 81 asserts wrongdoing or inculpatory knowledge against Defendants, Defendants deny the allegations.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 81.

Defendants deny Plaintiffs' prayer for judgment and respectfully seek judgment in their favor, with all claims against them being dismissed with prejudice.

## AFFIRMATIVE DEFENSES

By designating the below defenses, Defendants do not in any way waive or limit any defenses which are or may be raised by their denials and averments.  These defenses are pled in the alternative, and are raised to preserve the rights of Defendants to assert such defenses, and are without prejudice to Defendants' ability to raise other and future defenses.  Defendants expressly reserve all rights to re-evaluate their defenses and/or assert additional defenses upon discovery and review of additional documents and information, upon the development of other pertinent facts, and/or during pretrial proceedings in this action.

## FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they fail to state a claim upon which relief may be granted against Defendants.

## SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, under equitable doctrines, including, without limitation, estoppel, ratification, and failure to use due care.

## THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of contributory negligence, comparative negligence, and/or assumption of the risk.

## FOURTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to allege, and cannot prove, any facts showing that Defendants acted with the requisite intent or culpably participated in the alleged misconduct.

## FIFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not adequately pled, and cannot prove, loss causation.

## SIXTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendants did not directly or proximately cause or contribute to any alleged damage, loss, or injury sustained by Plaintiffs.

## SEVENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' injuries or damages, to the extent any exist, were caused by independent superseding and intervening events unconnected to Defendants and for which Defendants cannot be held liable.

## EIGHTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' damages, if any, resulted from the acts or omissions of other persons or entities over which Defendants had no control.  The acts of such persons or entities constitute intervening or superseding causes of harm, if any, suffered by Plaintiffs.

## NINTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs suffered no damages.

**TENTH DEFENSE**

Any damage, loss, or liability sustained by Plaintiffs (which Defendants deny) must be reduced, diminished, and/or barred in proportion to Plaintiffs' failure to mitigate, reduce, or otherwise avoid any alleged damages.

**ELEVENTH DEFENSE**

Plaintiffs' claims are barred by the equitable doctrine of unclean hands.

**TWELFTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because any recovery by Plaintiffs as against Defendants would constitute unjust enrichment.

**THIRTEENTH DEFENSE**

Plaintiffs' claims are barred because Defendants acted at all times in good faith and without malice.

**FOURTEENTH DEFENSE**

Plaintiffs' claims are barred because Plaintiffs have failed to join necessary parties to this action.

**FIFTEENTH DEFENSE**

Plaintiffs lack standing to bring some or all of their claims as asserted against the Defendants.

**SIXTEENTH DEFENSE**

Some or all of Plaintiffs' claims fail because they are not ripe.

**SEVENTEENTH DEFENSE**

Defendants are not liable because they acted as disclosed agents of Plaintiffs.

## **EIGHTEENTH DEFENSE**

Defendants will rely on any and all further defenses that become available or appear during discovery proceedings in this action and specifically reserve their right to amend this Answer for the purposes of asserting additional defenses.

**WHEREFORE**, Defendants respectfully seek judgment as follows:

A.      That Plaintiffs take nothing by virtue of the Complaint;

B.      That Plaintiffs' claims against Defendants are dismissed with prejudice;

C.      That Defendants be awarded the costs of defending this action, including reasonable attorneys' fees, costs and disbursements; and

D.      For such other and further relief as this Court may deem just and proper.

## COUNTERCLAIMS OF ROSERAMEY LITTLEJOHN AND ROSE LONG FINE ART

Roseramey Littlejohn and Rose Long Fine Art (hereinafter collectively referred to as the "Counterclaim Plaintiffs"), by and through their undersigned counsel, for their Complaint against The Degas Sculpture Project Ltd., Modernism Fine Arts Inc., Walter F. Maibaum and Carol Conn (hereinafter collectively referred to as the "Counterclaim Defendants"), hereby allege as follows:

### OVERVIEW

1.      Mr. Maibaum and Ms. Conn, the principals of The Degas Sculpture Project Ltd. and Modernism Fine Arts Inc., were friends with Ms. Littlejohn for years, and during that time sold works of art to each other.

2.      Beginning in 2013, the Counterclaim Defendants offered the Counterclaim Plaintiffs a number of works of art known as "American Masters."  The Counterclaim Defendants assured the Counterclaim Plaintiffs that these American Masters were authentic and valuable, and based on these assurances, the Counterclaim Plaintiffs agreed to purchase them from the Counterclaim Defendants for a total of $586,500.  Since purchasing them, the Counterclaim Plaintiffs have learned that these American Masters are worth far less than the amount they paid for them, and that some of them are not even authentic.

3.      One of these American Masters was among the items offered for sale to Luke Brugnara.  The sale to Luke Brugnara is the basis of the original complaint in this action.

4.      The Counterclaim Defendants have also taken a total of $110,000 from the Counterclaim Plaintiffs and refused to repay it.  In February 2014, the Counterclaim Defendants requested $50,000 from the Counterclaim Plaintiffs ostensibly to purchase art for them.  The Counterclaim Plaintiffs gave the Counterclaim Defendants the money, but the Counterclaim

Defendants never offered them any art or a refund.  In April 2014, the Counterclaim Defendants borrowed $60,000 from the Counterclaim Plaintiffs and never repaid it.

5.      In the original complaint in this action, the Counterclaim Defendants falsely allege that the combined $110,000 they took from the Counterclaim Plaintiffs was a partial payment on the sale of the works of art to Luke Brugnara.

## PARTIES

6.      Roseramey Littlejohn is an individual involved in the business of buying and selling works of art.  She resides in Tennessee.  Rose Long Fine Art is Ms. Littlejohn's art business.

7.      Walter Maibaum and Carol Conn are individuals involved in the business of buying and selling works of art.  They own and control a number of businesses, including the Degas Sculpture Project Ltd. ("DSP"), a purported corporation domiciled in New Jersey, and Modernism Fine Arts Inc. ("MOD"), a purported corporation domiciled in New York.  Upon information and belief, Mr. Maibaum and Ms. Conn reside in an apartment at 171 W. 57th Street in Manhattan.

8.      Upon information and belief, both DSP and MOD are alter egos of Mr. Maibaum and Ms. Conn that have not been operated as separate and distinct corporations.  For example, Mr. Maibaum and Ms. Conn run these and other corporations they control out of their apartment at 171 W. 57th Street in Manhattan.  Both DSP and MOD have the same Manhattan phone number, which is the phone number for Mr. Maibaum's and Ms. Conn's apartment.  In DSP's corporate filings, Mr. Maibaum and Ms. Conn are listed as Directors with their apartment listed as their address.  Internet posts regarding MOD also list their apartment as its address, and one of MOD's bank accounts lists their apartment as its address.  Mr. Maibaum and Ms. Conn have

ostensibly separate email accounts for DSP and MOD, but use them interchangeably and also for personal correspondence.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over all Counterclaim Defendants because they reside and conduct business in New York.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(1) and (b) because all Counterclaim Defendants reside in New York County and a substantial part of the events or omissions giving rise to the claims in this action occurred in New York County.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

### Counterclaim Plaintiffs Purchase "American Masters" from Counterclaim Defendants

12.     In early 2013, the Counterclaim Plaintiffs agreed to purchase four works of art from the Counterclaim Defendants.  These works of art, described below, are hereinafter collectively referred to as "American Masters."

13.     On or about February 15 and 16, 2013, Mr. Maibaum and Ms. Conn called and emailed Ms. Littlejohn offering to sell her a Maurice Prendergast watercolor named *Venice Reva Deli Schiavornitwo* for $165,000.  In the emails, they touted the value of the Prendergast and assured Ms. Littlejohn that it was authentic.  They also claimed that a similar Prendergast had sold at auction for over five times the price they were offering to Ms. Littlejohn.  In the same emails, Mr. Maibaum and Ms. Conn also offered to sell Ms. Littlejohn a George Luks painting named *Portrait of a Young Woman* for $33,000.  Ms. Littlejohn agreed to purchase both

16

paintings, received them, and made full payment.  In the fall of 2013, Ms. Littlejohn had the Prendergast restored at a cost of approximately $1,300.

14.     On or about March 13, 2013, as Ms. Littlejohn was completing payments for the aforementioned Prendergast and Luks, Mr. Maibaum and Ms. Conn emailed Ms. Littlejohn and offered her another Luks painting named *Feeding the Chickens* for $38,500.  Attached to the email were materials describing the painting that listed its provenance as "Private Collection" and "Corporate Collection."  The email also asserted that even the painting's frame was "valuable."  Ms. Littlejohn agreed to purchase this painting, received it, and made full payment.

15.     On or about March 13 and 14, 2013, Mr. Maibaum and Ms. Conn emailed Ms. Littlejohn and offered her another Luks painting named *Portrait of Gertrude Vanderbilt Whitney* for $350,000.  They described the painting as "highly important" and claimed that a well-known auction house had estimated its value at up to twice the price they were offering to Ms. Littlejohn.  Ms. Littlejohn agreed to purchase this painting, received it, and made full payment.

16.     On or about May 1, 2013, Ms. Littlejohn emailed a representative of a well-known museum to see whether the museum might be interested in purchasing the Luks *Portrait of Gertrude Vanderbilt Whitney*.  The representative responded that the museum was not interested, and that questions had been raised about whether the woman depicted in the portrait was actually Gertrude Vanderbilt Whitney.  Ms. Littlejohn forwarded the representative's email to Mr. Maibaum and Ms. Conn, who responded that the painting "has always been known as a portrait of GVW."

17.     During the summer of 2013, Ms. Littlejohn offered the Prendergast and Luks *Portrait of Gertrude Vanderbilt Whitney* to a number of auction houses for possible sale at auction.  She learned from the auction houses that both paintings had previously been offered to

the auctions houses.  The mere fact that a work of art is offered to numerous potential buyers or auction houses can decrease the market value for the work of art.  The auction houses had also concluded that the paintings had been damaged and heavily restored and rejected both for inclusion in any auctions.  In addition, Ms. Littlejohn had a restorer examine the Luks *Feeding the Chickens* and he informed Ms. Littlejohn that it is not authentic.

18.     In September 2013, Ms. Littlejohn called Ms. Conn and told her about the problems she was experiencing with the works of art that they sold her.  On or about September 25, 2013, Mr. Maibaum and Ms. Conn emailed Ms. Littlejohn and defended the authenticity of the paintings, but also acknowledged the difficulties she was experiencing.  They expressed a desire to "help" Ms. Littlejohn, and told her that they would give her a bronze Degas sculpture that they owned.  They never gave Ms. Littlejohn the sculpture.

19.     The website of Defendants' ostensible corporation Modernism Fine Arts states that "Authenticity is always guaranteed."

### Counterclaim Defendants' Degas Bronzes

20.     Degas was a famous French artist who was active in the late Nineteenth and early Twentieth centuries.  During his lifetime, Degas only displayed one sculpture made of wax.  He made other wax sculptures but never displayed them and never had any of his sculptures cast in bronze.

21.     After his death, Degas' heirs had plaster casts made of his sculptures.  The casts were used to make bronzes of the sculptures, which were then sold to the public for large sums.

22.     In 2001, Mr. Maibaum and Ms. Conn purportedly learned of a previously unknown Degas plaster cast.  They traced the cast back to the Valsuani Foundry in France.

Upon visiting the Foundry in 2004, they apparently learned that it contained over seventy previously unknown plaster casts of Degas sculptures.

23.     Mr. Maibaum's and Ms. Conn's corporation The Degas Sculpture Project Ltd. bought the plaster casts and participated in using them to make new bronzes.  Since then, Mr. Maibaum, Ms. Conn and their corporations have touted the casts and bronzes and consistently defended their authenticity.  They have also attempted to tightly control purchases and sales of the bronzes.

24.     The Counterclaim Plaintiffs purchased certain Degas bronzes from the Counterclaim Defendants.

### The Brugnara Theft

25.     In March 2014, Ms. Littlejohn contacted a former client named Luke Brugnara. Brugnara was at one time a major figure in commercial real estate in California, and he had previously purchased works of art from Ms. Littlejohn.   Ms. Littlejohn offered Brugnara one of the Degas bronzes she had purchased from the Counterclaim Defendants.  Brugnara expressed interest in it and inquired about other art that she might have for sale.

26.     Ms. Littlejohn contacted Mr. Maibaum and Ms. Conn and informed them that a former client was interested in purchasing art.  Ms. Littlejohn told Mr. Maibaum and Ms. Conn about Brugnara's interest because she understood them to be suffering financial difficulties.  She believed that Mr. Maibaum and Ms. Conn might benefit from participating in selling art to Brugnara.

27.     Mr. Maibaum and Ms. Conn were excited at the prospect of selling a number of works of art and began loading up the deal with works of art that they owned or held on consignment.  Ms. Littlejohn expressed concerns to Mr. Maibaum and Ms. Conn about trying to

sell too many works of art to Brugnara, but they pushed her to include a number of additional works of art in the sale.  Mr. Maibaum and Ms. Conn also convinced Ms. Littlejohn to let them sell Brugnara one of their own Degas bronzes, rather than Counterclaim Plaintiffs' Degas bronze.

28.     The Counterclaim Defendants then set about structuring the deal with the apparent intention of concealing their involvement.  Mr. Maibaum and Ms. Conn communicated with Ms. Littlejohn via email in late March 2014 to arrange the terms of the transaction.  In a number of instances, they instructed Ms. Littlejohn on what to say to Brugnara.  Mr. Maibaum and Ms. Conn primarily sent their emails from MOD's email account, even for details of the transaction concerning their Degas bronze that was purportedly owned by DSP.

29.     Eventually, Brugnara agreed to purchase (1) the Degas bronze, (2) a collection of sixteen paintings by Willem de Kooning, (3) a collection of etchings by Pablo Picasso, (4) a drawing by Joan Miro and (5) a painting by George Luks.  Of these, only the Luks was owned by Counterclaim Plaintiffs.  The Counterclaim Defendants owned every other work of art in the deal or held them on consignment.

30.     Brugnara agreed to pay approximately $11,000,000 for all the works of art and claimed that he would display them in a museum he owned.  The Counterclaim Defendants agreed to pay Counterclaim Plaintiffs a commission on the deal in an amount derived based on the prices being charged to Brugnara.  Mr. Maibaum and Ms. Conn knew that Brugnara was the buyer of the works of art, and even performed their own due diligence on him.

31.     Each of the works of art being sold to Brugnara was stored by the parties at an art storage facility in Manhattan called Cirker's.  On or about March 27 to March 28, 2014, Mr. Maibaum and Ms. Conn emailed Cirker's from the MOD email account and directed that all their

works being sold to Brugnara – including the Degas bronze owned by DSP – be moved into Cirker's crate and freight department.  The emails also provided Cirker's with instructions on shipping the works of art to Brugnara.  The emails also directed Cirker's to charge the shipping costs – totaling approximately $5,000 – to Ms. Littlejohn.

32.     On or about March 31 and April 1, 2014, Mr. Maibaum and Ms. Conn emailed Ms. Littlejohn invoices for the works of art that they had prepared for her to give to Brugnara. The invoices they prepared incorrectly listed Rose Long Fine Art as the seller.  All of the invoices – including the invoice for the Degas purportedly owned by DSP – were sent from MOD's email account.

33.     At the same time as Mr. Maibaum and Ms. Conn were structuring the transaction to conceal their involvement, they arranged and paid for the insurance on the works of art in the sale that they owned or held on consignment.  On April 1, 2014, Mr. Maibaum and Ms. Conn also sent Ms. Littlejohn an email directing her to inform Brugnara that his insurance should cover the works of art upon delivery.  From March 21 to April 2, 2014, Mr. Maibaum and Ms. Conn also sent Ms. Littlejohn emails from the MOD email account instructing her on how to defend the authenticity of their Degas bronze.

34.     Ms. Littlejohn travelled to San Francisco on April 6, 2014 to be present for the delivery to Brugnara.  On April 7, 2014, she went to the address designated by Brugnara and observed that it was a private residence.  Brugnara met Ms. Littlejohn and accepted the shipment into his garage.  Ms. Littlejohn was concerned at the circumstances of the delivery and pressed Brugnara to open the cases in her presence so that the contents could be verified and to make payment.  Brugnara refused and told her that he had a prior appointment.  He directed Ms. Littlejohn to return the following day.

35.     Ms. Littlejohn left Brugnara's residence and began attempting to contact him by phone and electronic correspondence to arrange another meeting.  Brugnara became increasingly hostile to Ms. Littlejohn's communications and either refused to meet her or failed to respond.

36.     During this time, Ms. Littlejohn frequently consulted by phone and electronic correspondence with Mr. Maibaum and Ms. Conn.  Within days of the delivery of the art to Brugnara, Mr. Maibaum and Ms. Conn retained an attorney in California named Harvey Schochet to represent them.  Mr. Schochet began attempting to negotiate a confidential resolution of the matter first with Brugnara and then with an attorney for Brugnara.  During this time, Mr. Maibaum and Ms. Conn admonished Ms. Littlejohn that the dispute should be resolved quietly and that their own names should not be mentioned as part of the transaction.

37.     Brugnara continued to refuse to allow anyone to inspect the art or to make payment, and began alternately claiming that the works of art were worth a fraction of the purchase price, that certain items had not been delivered, or that Ms. Littlejohn gave him all the works of art a gift.

38.     Ms. Littlejohn became increasingly concerned by the situation, particularly because she understood that the insurance on the works of art would only cover them for five days after delivery.  She repeatedly expressed her concerns about the delay to Mr. Maibaum, Ms. Conn and Mr. Schochet, but was told by them that the matter should be resolved confidentially and without any mention of Mr. Maibaum or Ms. Conn.  She also told Mr. Maibaum and Ms. Conn that the matter should be reported to law enforcement authorities, but they admonished her that the resulting publicity would harm their reputations.

39.     On or about April 18, 2014, Mr. Maibaum and Ms. Conn contacted Ms. Littlejohn by phone and by email and told her that she should pay for their attorney Mr. Schochet's legal fees.  Ms. Littlejohn refused.

40.     Ultimately, Ms. Littlejohn retained an attorney on her own behalf who notified federal law enforcement authorities about the theft.  In late May 2014, Brugnara was arrested on a criminal complaint and his home was searched pursuant to a search warrant.  Four of the five crates shipped to Brugnara were recovered by the government.  The fifth crate containing Mr. Maibaum's and Ms. Conn's Degas bronze was not recovered.  The whereabouts of their bronze is as yet unknown.

**Counterclaim Defendants Convert Counterclaim Plaintiffs' Funds**

41.     On or about February 18, 2014, Mr. Maibaum and Ms. Conn were about to travel to Italy.  They called and emailed Ms. Littlejohn from the MOD email account and requested $50,000 from her to be used by them to purchase works of art while in Italy.  They stated in their email that Ms. Littlejohn could then select whatever she wanted out of their purchases, with her $50,000 applied toward the prices they would charge her.  They also stated that they would refund any difference between the $50,000 and the value of the art she selected.  Based on these assurances, Ms. Littlejohn sent $50,000 to an MOD bank account on or about February 24, 2014.  The address for the MOD account was Mr. Maibaum's and Ms. Conn's apartment.  Ms. Littlejohn thereafter never received any works of art purchased by Mr. Maibaum and Ms. Conn in Italy, and never received a refund from them.  The Counterclaim Defendants simply kept the money.

42.     On or about April 14, 2014, Mr. Maibaum and Ms. Conn contacted Ms. Littlejohn by email and informed her that they needed $60,000.  They described their need as "really

urgent."  Mr. Littlejohn transferred $60,000 to the MOD bank account on or about April 15,

2014 on the expectation that it would be repaid.  Once again, the Counterclaim Defendants

simply kept the money.

43.    The Counterclaim Defendants have taken a total of $110,000 from the

Counterclaim Plaintiffs and failed to repay it.  On a number of occasions Ms. Littlejohn tried to

raise the issue of repayment with Mr. Maibaum and Ms. Conn, but each time they refused to

discuss it.  Moreover, in the original Complaint in this action, Mr. Maibaum and Ms. Conn

(through their ostensible corporations MOD and DSP) falsely claim that the combined $110,000

they took from Counterclaim Plaintiffs was a partial payment for the sale of art to Brugnara.

## FIRST COUNTERCLAIM

### (Fraud in the Inducement as to All Counterclaim Defendants)

44.    The Counterclaim Plaintiffs reallege each allegation above as if fully set forth

herein.

45.    The Counterclaim Defendants conspired to defraud the Counterclaim Plaintiffs

into purchasing American Masters that were inauthentic or worth far less than the values they

represented to the Counterclaim Plaintiffs.  The Counterclaim Defendants knowingly

misrepresented materials facts and omitted material facts to induce the Counterclaim Plaintiffs to

purchase these American Masters, including assuring them that the works of art were legitimate

and valuable.  They also did not inform the Counterclaim Plaintiffs that some of the American

Masters had been offered to auction houses and rejected.

46.    The Counterclaim Defendants knew that the Counterclaim Plaintiffs would rely

on their misrepresentations and omissions.  The Counterclaim Plaintiffs justifiably relied on the

Counterclaim Defendants' misrepresentations and omissions and suffered severe harm as a direct result of such misrepresentations and omissions.

47.     The Counterclaim Defendants conspired to defraud the Counterclaim Plaintiffs with such malice and wanton dishonesty that the Counterclaim Plaintiffs are entitled to compensatory damages in an amount to be determined at trial, plus punitive damages in an amount sufficient to deter such misconduct in the future, and interest.

## SECOND COUNTERCLAIM

### (Breach of Contract as to All Counterclaim Defendants)

48.     The Counterclaim Plaintiffs reallege each allegation above as if fully set forth herein.

49.     The Counterclaim Defendants offered the Counterclaim Plaintiffs American Masters that they claimed were authentic and valuable.  The Counterclaim Plaintiffs agreed to purchase the American Masters, received them, and made payment to the Counterclaim Defendants.  The terms of this arrangement were set forth in writing.  Some or all of the American Masters the Counterclaim Plaintiffs purchased from the Counterclaim Defendants are not authentic and are not valuable.

50.     The Counterclaim Defendants also took $50,000 from Counterclaim Plaintiffs to purchase art for them and borrowed $60,000 from Counterclaim Plaintiffs.  The terms of this arrangement were set forth in writing.  Counterclaim Defendants have failed to offer Counterclaim Plaintiffs art purchased with Counterclaim Plaintiffs' funds, and have failed to refund or repay Counterclaim Plaintiffs' funds.

51.     The Counterclaim Plaintiffs suffered damages as a result of the aforementioned material breaches of the terms of the contracts.  The Counterclaim Plaintiffs are entitled to compensatory damages in an amount to be determined at trial plus interest.

## THIRD COUNTERCLAIM

### (Negligence as to All Counterclaim Defendants)

52.     The Counterclaim Plaintiffs reallege each allegation above as if fully set forth herein.

53.     The Counterclaim Defendants' determination to conceal their involvement in their sale to Brugnara at all costs, and their refusal to notify law enforcement authorities of Brugnara's theft, resulted in the failure of Brugnara to pay for the works of art or return them.  The Counterclaim Defendants' reckless, dilatory and self-interested conduct may also have caused the expiration of the five-day period of insurance coverage after delivery.  Worse still, the Counterclaim Defendants are now apparently attempting to cover up their negligence by misstating the terms of the sale to Brugnara.

54.     The Counterclaim Plaintiffs suffered harm as a direct result of the Counterclaim Defendants' negligence.  The Counterclaim Plaintiffs are entitled to compensatory damages in an amount to be determined at trial plus interest.

## FOURTH COUNTERCLAIM

### (Conversion as to All Counterclaim Defendants)

55.     The Counterclaim Plaintiffs reallege each allegation above as if fully set forth herein.

56.     The Counterclaim Defendants have wrongfully appropriated and have wrongfully exercised permanent dominion and control over the Counterclaim Plaintiffs' funds to the

26

exclusion of the Counterclaim Plaintiffs.  These funds include both the $110,000 taken from Counterclaim Plaintiffs as well as the inflated prices Counterclaim Plaintiffs paid to purchase Counterclaim Defendants' American Masters.

57.     The exercise of dominion and control over the Counterclaim Plaintiffs' funds by the Counterclaim Defendants is without legal justification and constitutes a conversion of the Counterclaim Plaintiffs' funds.  The wrongful conversion of the Counterclaim Plaintiffs' funds was accomplished through fraud, willful and wanton misconduct and/or recklessness.

58.     The Counterclaim Plaintiffs are entitled to immediate possession and control over the funds wrongfully converted by the Counterclaim Defendants, which total an amount to be determined at trial, plus punitive damages and interest.

## FIFTH COUNTERCLAIM

### (Unjust Enrichment as to All Counterclaim Defendants)

59.     The Counterclaim Plaintiffs reallege each allegation above as if fully set forth herein.

60.     As a direct result of the aforementioned actions by the Counterclaim Defendants, the Counterclaim Plaintiffs have suffered severe financial harm.

61.     The Counterclaim Defendants have retained benefits as a result of the aforementioned improper, fraudulent and negligent activities.  The retention of those benefits was unjust because the Counterclaim Defendants engaged in unconscionable conduct for which there is no justification.

62.     The Counterclaim Plaintiffs are without remedy at law to rectify their financial harm, which occurred as a direct result of the Counterclaim Defendants' enrichment through improper and unjustifiable conduct.

63.     The Counterclaim Plaintiffs are entitled to compensatory damages in an amount to be determined at trial plus interest.


## DEMAND FOR RELIEF

Wherefore, the Counterclaim Plaintiffs demand as judgment:

1.     Awarding compensatory damages to the Counterclaim Plaintiffs in an amount to be determined at trial;

2.     Awarding prejudgment interest to the Counterclaim Plaintiffs;

3.     Awarding punitive damages in favor of the Counterclaim Plaintiffs;

4.     Awarding the Counterclaim Plaintiffs costs and disbursements in this action, including, but not limited to, reasonable attorney's fees, costs and expenses; and

5.     Granting such other and further relief as the Court deems just and proper.



Dated:  November 14, 2014
        New York, New York


**DE FEIS O'CONNELL & ROSE, P.C.**


By: _____
Philip C. Patterson (PP-9995)
Vera M. Kachnowski (VK-0904)

500 Fifth Avenue, 26th Floor
New York, NY 10110
P: (212) 768-1000
F: (212) 768-3511

*Attorneys for Defendants/Counterclaim Plaintiffs*

28